ABIJAH MANN, Jr., Appellant, *v.* EVERARD PALMER, Administrator, etc., Respondent.

SAME, Respondent, *v.* SAME, Appellant.

The *facts* in this case fall under the general head of *contracts*, and the effect upon a contract of a general stipulation of parties made subsequently, during the pendency of a suit to set aside the contract as void. The peculiar facts and circumstances under which the action was brought, and which were established on the trial, form so large and so essential a part of the *case*, that no intelligent idea can be formed of the conclusions of law reached by the court, from head-notes of any reasonable length, and the same will be best ascertained from the statement and opinions respectively given below.

THESE are cross appeals from a judgment of the General Term of the eighth district. The action was tried before a referee. The facts found and appearing in the case are substantially these: In November, 1851, one Daniel Lockwood was seised of certain lands situate in the city of Buffalo. On the 21st day of that month he entered into an agreement with the plaintiff, whereby he agreed to convey to him the said lands, subject to his wife's right of dower, and to assign to said plaintiff an award then lately made in his favor for lands taken for a railroad, in consideration of which said plaintiff agreed, among other things, to advance and pay, for the benefit of said Lockwood, a sum sufficient to pay off and discharge all taxes and assessments on any portion of the property of said Lockwood, or of his children, in the city of Buffalo, not exceeding $1,500; and that he would cause said premises to be sold at such time as he should deem proper, within three years, either at public or private sale, for cash, and after deducting out of the proceeds whatever sums the plaintiff might have advanced or paid for said Lockwood, under the agreement, with semi-annual interest, and all charges, assessments, and expenses in the care, management, and sale of said land, to pay over to Lockwood one-half of the net

VOL. II.    23

proceeds over and above certain mortgages of which he agreed to procure an assignment to himself. On the following day Lockwood conveyed said lands to plaintiff, under and pursuant to said agreement. On the same day the plaintiff entered into an agreement with George Palmer, the defendant's intestate, whereby, in substance, the plaintiff agreed to sell, and said Palmer to purchase, all the rights in said lands he had acquired under the said agreement with Lockwood, which was referred to and made part of said agreement with Palmer, and to convey the lands as said Palmer should direct, and said Palmer agreed to sell the same as stipulated in the contract between plaintiff and Lockwood, and in all respects to perform the stipulations of that contract on the part of plaintiff, and to indemnify the plaintiff against the same. On the same day Palmer entered into an agreement with William W. Mann, a son of plaintiff, to the effect that he would give the said William W. Mann the management and sale of the land, under his directions, and would give the said William W. one-half of the proceeds of the sales, over and above the share of Lockwood and advances made for taxes, etc., on account of said lands. And said Palmer further agreed with said William W. Mann that he would advance all moneys which he, said Palmer, should deem expedient and necessary for the purchase and preservation of said property and for the perfection and security of the title thereof. These several agreements were all under the seals of the respective parties.

Afterwards Palmer and William W. Mann sold certain parcels of said land to certain railroad companies, and the plaintiff conveyed the same at the request of Palmer, and Palmer and William W. Mann severally received the proceeds thereof.

In July, 1852, Lockwood was, under a writ of inquisition, found to be an habitual drunkard, incapable of managing his affairs, and to have been so at and prior to the time of making his said agreement with, and conveying said lands to, plaintiff, and such further proceedings were had that Frederick P. Stevens was duly appointed the committee

of said Lockwood and of his estate. Stevens afterward, as such committee, with Lockwood, commenced a suit against the plaintiff and said Palmer and William W. Mann, and others, for the purpose of setting aside the contract and conveyance between Lockwood and said plaintiff, and for an account of the proceeds of all sales made under such contract and conveyance, on the ground of said Lockwood's incapacity as an habitual drunkard, and on the alleged ground of fraud in the Manns in obtaining said contract and conveyance; and in said suit an injunction was granted against plaintiff, restraining him from making further conveyances of said lands. The plaintiffs in said action set forth the sales and conveyances to the railroad companies above mentioned, and, as to the proceeds thereof, demanded one-half of the same only.

This action was pending till the spring of 1856, and in the mean time, nothing further was done in respect to the sale of said lands. At that time the attorneys of the several parties entered into a stipulation in said action, by which it was agreed that the suit should be discontinued upon payment to the plaintiffs therein of $700 costs, and the payment and security, as therein provided, of the further sum of $11,000, upon which the plaintiff in that action agreed to deliver up to the plaintiff in this action, his contract with Lockwood to be canceled, and also to execute to Wm. W. Mann, a deed of release, of all the title and interest of Lockwood in said lands, and cause to be executed and delivered to him a release of the right of dower of the wife of said Lockwood. This arrangement was sanctioned by the court on application of said committee, and in May, 1856, was carried out by the delivery and cancellation of said contract and by the execution by the committee and Mrs. Lockwood, to said Wm. W. Mann, of a conveyance of said lands. The said Wm. W. Mann paid said $700 costs, and secured the said sum of $11,000 by his bond and mortgage, which were subsequently paid to said Stevens by the plaintiff herein. The settlement of said action was negotiated and carried out by the plaintiff in this action; and Wm. W. Mann, with said Stevens, and the defend-

ant, Palmer, acquiesced in and consented to said settlement. On or about the 5th day of June, 1860, the said Wm. W. Mann conveyed said lands to the plaintiff, and on or about the 30th day of June, 1861, assigned to him all claims and matters, etc., etc., between him and said Palmer, growing out of the said agreement between them. Subsequent to the settlement of the suit above mentioned, no steps were taken by any of the parties to carry out the original project of selling said lands under the several contracts above referred to. The referee found as matter of fact that, "in and by the settlement of said action brought by said Stevens, as committee as aforesaid, and of the subject-matter thereof, made in manner and form aforesaid, it was the intent and understanding of the said Abijah Mann, Jr., William W. Mann, George Palmer and other defendants to said action, that the aforesaid lands, except the parcel thereof sold and conveyed to the Buffalo and New York City Railroad company, and the parcel sold and conveyed to the Buffalo and State Line Railroad company, as aforesaid, should be vested in the said William W. Mann in fee simple, and that the other parties to said action should not have any further interest in them; that the said agreement between the said Abijah Mann, Jr., and the said Lockwood, and the said agreement between said Abijah and the said George Palmer, and the said agreement between said Palmer and the said Wm. W. Mann, should be canceled; that the said enterprise or speculation set on foot by said agreement between said Abijah Mann, Jr., and the said Lockwood should be abandoned, and that they should account among themselves for the moneys which had, in the prosecution thereof, been received, advanced and expended by them respectively under said agreements prior to the said settlement of said action."

The referee also found that the plaintiff herein did not, prior to said settlement of said action, receive, advance or expend any money under the aforesaid agreement, and he proceeded to take and state an account of the moneys received by Wm. W. Mann and George Palmer, respectively, as between themselves under their said agreement by which he

found that Palmer received the sum of $4,000, and paid out (chiefly to Wm. W. Mann) the sum of $2,014.41, leaving a balance of $1,935.59, for which sum with interest (after deducting an off-set against Wm. W. Mann, allowed by the referee of $306.21), judgment has been given to plaintiff against defendant.

The referee finds, also, on said accounting that said Wm. W. Mann received the sum of $7,102.10 and paid $5,468.80.

The referee also found that, on the 26th of July, 1853, George Palmer lent to Wm. W. Mann the sum of $1,500, on his note at three months, and that this action was commenced on the 6th day of September, 1861. The amount of this note was claimed (and set up in the answer) as a set-off or counter claim, but the same was rejected by the referee, on the ground that it was barred by the statute of limitations.

The referee decided that the plaintiff was not entitled to recover against the said defendant the sums paid Stevens on the settlement of said suit, nor any thing subsequently paid for taxes and assessments of said lands; that plaintiff was entitled to recover the balance of the proceeds of sales in said Palmer's hands prior to the settlement, with interest.

To the decision refusing to allow the sums paid Stevens, and subsequent taxes and expenses, and to the various findings of the referee adversely to him, the plaintiff excepted.

The defendant excepted to the rejection of the $1,500 note as a set-off, and to the decision awarding judgment against him for the said balance.

*Mann & Rodman,* for the plaintiff.

*Wm. H. Green,* for the defendant.

DENIO, Ch. J. The most important question as regards the amount, arises upon the claim of the plaintiff to be allowed the sum of $11,700, paid by W. W. Mann, to the committee of Daniel Lockwood, for the purchase of the remaining interest of Lockwood and his wife in the land. The plaintiff claims to be entitled to this by virtue of his contract with

Palmer, or the assignment of W. W. Mann to him of June 3, 1861. This assignment professes to transfer the agreement which had been entered into between George Palmer, the defendant's intestate, and W. W. Mann, and all rights of action which might be had under it. One inquiry is whether W. W. Mann had any right of action against Palmer under that agreement. The interest, which was the subject of the agreement between those parties, was the rights acquired by Palmer under his contract with the plaintiff, in the remaining land of Lockwood, incumbered by mortgages and tax liens, and subject to his wife's inchoate right of dower. The stipulations of the parties were that W. W. Mann should take charge of the sales of the land, under the direction of Palmer, and that the one-half of the net proceeds of the sales, which would have been the share of Palmer but for the agreement with W. W. Mann, should be equally divided between him and said Mann. Palmer was to make advances, in his discretion, for the purchase and preservation of the property, and for the security of the title. The right and duty of the plaintiff under the original contract, to make sales of the lands, was limited to three years from the 21st November, 1851. After that time had passed, with the bulk of the land remaining unsold, the agreement so far as it looked to sales for the final account of the plaintiff, and those having interest under him of one part, and Lockwood of the other part, had expired. It would, no doubt, result from this that the plaintiff would afterward hold the legal title of the land as a lien for his advances made under the agreement, over and above what he or his assignees, Palmer and W. W. Mann, had received. The substance of the original agreement was the creation of an agency by Lockwood, for the sale of his lands; and for the plaintiff's services, in making the sales, and the advance of his money and credit to manage the liens and incumbrances, he was to have half the net proceeds of the sales. But the agency was not perpetual as to time, but was limited to three years from the time of making the agreement; that limitation extended equally to Palmer, under his contract

with the plaintiff, and to W. W. Mann under his agreement with Palmer. They were all based on the first contract.

In September, 1855, after the limitation had expired, the validity of the arrangement between Lockwood and the plaintiff, and of course of all the derivative contracts connected with and depending on that arrangement, were challenged by Stevens, claiming to represent the interest of Lockwood, as his committee, on the ground of want of mental capacity of Lockwood to affect his property by his contracts and conveyances. All proceedings under the agency were suspended during the pending of that suit, and it had, moreover, ceased to be operative by the efflux of time. Stevens, by his suit, sought to annul and have declared void all the transactions of the plaintiff, Palmer, and W. W. Mann, and to have paid to him all the money which they or either of them had received as the fruit of these transactions, except that he elected to affirm certain sales of portions of the land which had been made to certain railroad companies.

This suit was settled between the parties to it by stipulations entered into on the 1st of March, 1856, and the settlement was afterward confirmed and made the judgment of the court. The terms of the settlement were the following: First, the defendants were to pay the plaintiffs' costs, liquidated at the gross sum of $700. Second, they were to release to Daniel Lockwood all their claims against him or his estate which they had at the date of the agreement or had acquired since. This put an end to the title acquired by the deed of Lockwood to the plaintiff, and to all the stipulations of the contract for the sale of these lands. It completely annulled the agency, out of which all the transactions respecting the land arose. Third, a deed of release was to be executed to W. W. Mann of all of Lockwood's title and estate in the lands, and his wife was to release to him her right of dower; and, fourth, the plaintiff was to be released from all demands. These several stipulations, it is understood, were all performed by the respective parties. It appears to me perfectly clear that the subordinate agency created by the contract between the plaintiff and George

Palmer, and upon which this action is based, was completely subverted and broken up by this adjustment. The plaintiff had ceased to hold any title, nominal or otherwise, in the premises. He could no longer convey title to any parcels which should be sold under the agency of Palmer or the subordinate agency of W. W. Mann. There was no longer any subject to feed and support these agencies. There was no longer any portion of net profits to be paid to Lockwood, or to be divided between Palmer and W. W. Mann. That person could not any longer hold a subordinate agency under Palmer, for he had, by the assent of all the parties, and by a judgment of a competent court, become the owner of the whole estate. It is preposterous to consider this agreement as a purchase by W. W. Mann, for the purpose of perfecting the title which Lockwood had conveyed to the plaintiff, and a measure subsidiary to the sale of the lands under the original arrangement. It dislocated that arrangement in every part, and rendered it impossible that it should be further pursued, even if the expiration of the three years had not terminated the agency, which was its principal object. There is, therefore, no reasonable ground for a recovery by the plaintiff of the whole or any part of the $11,000 paid to the committee of Lockwood. These views, if correct, dispose of the plaintiff's appeal. Upon the appeal of the defendant, I have felt more difficulty.

Palmer, the defendant's intestate, had received $4,000 while the agency was in active operation. This sum and the interest, after deducting certain sums paid by him, he is charged with, and no allowance is made to him for services, or for any interest he would have had under the contract with the plaintiff. By the two contracts, the one with the plaintiff and that with W. W. Mann, the net proceeds of lands sold were to be divided in the proportion of one-half to Lockwood, one-fourth to Palmer, and one-fourth to W. W. Mann. Such, it is conceded, would have been the right of the parties to this money if the contract had been fully executed. But it was executed only in part, and it was then suspended by the expiration of the three years, and was finally annulled by the settlement. Why should not the

rights of the parties (except Lockwood) be adjusted between themselves on the footing of their contracts? It is true that the complaint, in the suit brought by Stevens, claimed all the moneys which had been received by any of the parties under the professed agency. But the settlement and judgment did not provide for the payment of these moneys to Stevens, as the representative of Lockwood. Whether they, or either of them, entered into the consideration of the purchase, by W. W. Mann, of Lockwood's remaining interest, we cannot say. Probably the other sum which W. W. Mann had received did. He was the purchaser of that interest, and it is fair to suppose that the money remaining in his hands as the proceeds of a parcel of land sold to the other railroad company went to reduce the amount which he would otherwise have been required to pay. But Palmer took no interest under the conveyance made to W. W. Mann, and I see no reason to suppose that the money in his hands, or at least the portion of it which he was entitled to, entered into the price which was paid. The settlement was the result of a compromise. No one can say which of its terms was considered the compensation for the other. Mr. Stevens abandoned the pursuit of the money, and, instead of persisting in a reconveyance of the remaining land, he conveyed it to W. W. Mann, and he, as committee of Lockwood, received a gross sum of money in full of his claims, and for the price of the land.

The compromise agreement, *prima facie*, and so far as we can discover, left this sum of $4,000, in Palmer's hands. So far as all except the one-fourth is concerned, it may be said that the plaintiff, by force of the release from the committee and the assignment from W. W. Mann, represents it and is entitled to receive it. But I do not see what right he has to the one-fourth which Palmer was entitled under his contract to retain. There is another view, leading to the same result. If the conveyance to the plaintiff from and his agreement with Lockwood were invalid on the ground of want of disposing capacity in the lattter, that infirmity was not the fault of Palmer. The plaintiff must be taken to have repre-

sented to him that he had a valid conveyance and agreement; and he invited him to go on and make sales and retain one-half of the net proceeds, a moiety of his half Palmer relinquished to W. W. Mann, in consideration of his services. The plaintiff now seeks to recover back, and he has recovered this one-fourth which under these agreements Palmer was to keep; and he makes title to it under an arrangement by which the conveyance from Lockwood and the agreement with him are rescinded. It seems to me that he ought to be estopped from claiming that which he had agreed Palmer should have, and which he would have been clearly entitled to if the representations made to Palmer had been accurate. Hence I am of the opinion that this one-fourth and the interest on it should be deducted from the recovery.

I think the referee was right in disallowing the note of W. W. Mann. It was wholly unconnected with the subject of the land, and the plaintiff was never liable for it. Moreover, it was barred by the statute of limitations.

I am of opinion that the judgment should be reversed on the defendant's appeal unless the plaintiff will remit the part of the amount represented by the one-fourth part of the $4,000, which has been allowed to him.

DAVIS, J. The plaintiff seeks to recover the $11,000 paid on the settlement of the suit brought by the committee of Lockwood, and on the conveyance of the lands to Wm. W. Mann, and the taxes and assessments since paid, on the ground that, by the contract between Palmer and Wm. W. Mann, the former was bound to advance all moneys which he, said Palmer, should deem expedient and necessary for the purchase and preservation of said property, and for the perfection and security of the title thereof. But the referee has found, as a matter of fact, that it was intended and understood that the several contracts between plaintiff and Lockwood, and plaintiff and Palmer, and Palmer and Wm. W. Mann should be canceled by the new arrangement, under which Wm. W. Mann took the entire title to the lands in question, and that the original enterprise or speculation was thereby abandoned.

I think this finding was sustained by the evidence, and by the subsequent conduct of the parties, which seems to have been wholly inconsistent with the idea that Palmer was thought to be liable to advance or pay that sum. If that purchase had been under his contract with Wm. W. Mann it is not a little strange that he should not have been called upon to have paid or secured it to Stevens, the committee, at the time, or at least advised, in some way, that it was the intention to hold him responsible for it, and it is more singular that, if he were to pay the $11,000, because he deemed it necessary and expedient that the interests of Lockwood and the dower right of his wife should be bought in, that he should have suffered the entire title of the estate to have passed into the hands of Wm. W. Mann, and beyond the operation and control of his contract with Abijah Mann, and with no new arrangement that would protect and secure his very much enlarged and extensive interests in the property.

The circumstances of the arrangement were such, that it would require pretty strong proof to convince the mind that it was not intended and understood just as the referee has found.

It was a new subject-matter with which the parties were dealing, and not that described in and affected by the then existing contracts. The contracts of Palmer related only to the interest in the land acquired by plaintiff under his contract and deed with and from Lockwood. It was to protect that interest that Palmer covenanted to make such advances as his own judgment should deem expedient. But that interest, and the manner in which it was to be carried out and made profitable, were effectually terminated by the new arrangement. Palmer would have had no right, under his contract with Wm. W. Mann, to have paid this sum of $11,000 and charged it as advances under that contract. Nor could he have taken the whole title himself, or placed it in another, by any such payment, without thwarting the entire scheme or arrangement of the several contracts.

I think the finding of the referee on this subject was just and equitable, and abundantly sustained by all the facts and

circumstances of the case, and this fully disposes of the plaintiff's appeal.

Two questions are raised on the defendant's appeal. First, whether the note of $1,500 given by Wm. W. Mann to Palmer should have been allowed as an offset against plaintiff's claims. The referee rejected it, on the ground that it was barred by the statute of limitations. The plaintiff had not pleaded the statute in reply. But, as this note was not a counter claim, within the Code, no reply was necessary. It was a demand against a third party, the plaintiff's assignor, and not against the plaintiff, and it did not grow out of the transactions out of which this suit arose, so that it was connected with the subject-matter of the action, or the accounts between the parties, in any sense. It was, as the referee found, a demand for money lent, quite outside of the land transactions, and no judgment could have been rendered upon it against the plaintiff. The Code (§ 150) defines a counter claim as a demand existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and a reply is not necessary where the alleged offset is not within this definition. The referee was, therefore, right in holding that the statute of limitations was a bar to any right of action on this note. The second question on defendant's appeal arises upon the recovery by plaintiff of the entire balance in Palmer's hands of the proceeds of lands sold to the railroad company before the bringing of the suit by Lockwood's committee. It appears, from the opinion of the General Term, that on the first trial of this case the referee allowed to Palmer one-fourth of the proceeds of the lands so sold, over and above the advances made. The General Term ordered a new trial for this supposed error, unless the defendant would stipulate to increase the judgment against him by adding to it the one-fourth for which Palmer had been credited. Declining to make the stipulation the case went again to trial. The present judgment was given in accordance with the decision of the General Term.

. It will be seen that the question is whether, under all the circumstances, Palmer was equitably entitled to retain his proportionate share of the profits, so far as the original arrangement had been carried out before the intervention of the suit by Stevens. The decision of this question by the General Term goes upon the idea that, by the new arrangement made on the settlement of the suit, the original contracts were wholly rescinded and the parties remitted to their relations to the property as they existed before any contracts were made. That W. W. Mann, and afterwards plaintiff, succeeded to all the rights of Lockwood, and is entitled to every thing that Stevens could have claimed if, as committee, he had succeeded in the suit and set aside the whole of the transactions for the alleged fraud in dealing with an incompetent party; or that Lockwood could have claimed upon a mutual agreement of rescission which should have remanded all the parties to their original rights.

. But the referee has not found that such was the intention or understanding. His finding is, that the contracts should be canceled, and that the enterprise or speculation, set on foot by the agreement between plaintiff and Lockwood, should be abandoned, and that they should account among themselves for the money that, in the prosecution thereof, had been received, advanced or expended by them respectively under said agreements prior to said settlements of said action. It is to be noted in this connection, though not perhaps very material, that but one-half of the proceeds of the lands sold to the railroad companies was demanded by the suit, from which it would seem that the committee designed to ratify the contract so far as it had been executed in those particular instances. I do not see, either in the findings of the referee or the evidence, any thing satisfactorily to show that, by canceling the contracts and abandoning the enterprise, Palmer either agreed or understood that he was to pay over to any person the portion of the proceeds to which he was entitled under his agreements with the Manns. Why should he have done so? He was acting in good faith, and, so far as any thing indicates, had gone on in good faith to execute the con-

tracts which he had made with them. It was no fault of his that Lockwood's committee came in with a suit which, if well founded, would have established that the plaintiff had made a contract with him which he could not perform. If the committee had succeeded, and thereby compelled Palmer to have accounted and paid over every thing in his hands and lost the profits made and contemplated, would Palmer have had no rights or remedy under his contract with plaintiff? The failure to carry out the agreement would have been, in such case, no breach of the agreement on Palmer's part, but the failure of plaintiff's title, for the reasons alleged in the complaint of the committee, would have been a breach, it seems to me, on his part, for which Palmer would have had some remedy. His mere consent and acquiescence in an arrangement by which the contracts were canceled would doubtless have operated to extinguish any claim on his part for future or contingent profits, but would it operate, as between himself and the Manns, to compel him also to lose his interest in the profits already made? It strikes me as neither just nor equitable that these consequences should follow, because Palmer appears to have been, all the way through, an innocent party, acting in good faith, who has lost an apparently valuable contract by the default of the party who had entered into it with him. If Palmer had been out of pocket by reason of his advances, there seems to me to have been nothing in the settlement that should have prevented his calling upon the plaintiff to reimburse him, after the plaintiff's necessity of settling the suit had involved a breach of his contract with Palmer. The same reason would operate to protect him in the enjoyment of his share of realized profits.

On a careful examination it appears to me the whole case, as between the Manns and Palmer, comes just to this : They have mutually consented, inasmuch as it has become impracticable to carry out the enterprise as it was originally contemplated, to stop it at the point where the settlement of the suit found it; to cancel these several contracts at that point of time; to permit the lands to go in fee in other

directions and for other purposes, and to adjust as between themselves what had been done by a mutual accounting of receipts and expenses, and a division of profits, if any, according to the contracts. This would leave William W. Mann, who had become for this purpose the assignee of Lockwood, entitled to receive three-fourths of the net proceeds, to wit: one-half for Lockwood's share, one-fourth for his own, and Palmer to receive the other fourth as the part he was entitled to under his agreement with William W. Mann. As assignee of William W., the plaintiff has succeeded to just these equities and in accordance therewith the accounts should have been settled.

This, I believe, would carry the case back to the original judgment rendered by the referee, or if not it is upon the present accounting easily attainable upon the figures produced before the referee.

On the defendant's appeal the judgment should be reversed and a new trial ordered, unless the plaintiff stipulate to make the necessary deductions to conform his judgment to the views above expressed, in which case judgment should be affirmed.

On the plaintiff's appeal the judgment should be affirmed. All concur.

Judgment affirmed on terms stated.